UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

TIMOTHY WILLIAM HAWLEY,

    Petitioner,

    v.

SCOTT MCEWEN, Warden,

    Respondent.

Case No. 12-cv-05101-JD

**ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS**

Re: Dkt. No. 1

Petitioner Timothy Hawley is a California state prisoner. He brings five claims under 28 U.S.C. § 2254 in this petition for habeas relief. The Court has carefully considered a full round of briefing and oral argument, and denies the petition.

## BACKGROUND

On December 3, 2008, defendant was charged by amended information with five counts of aggravated sexual assault on a child (Cal. Pen. Code § 269), three counts of forcible rape (Cal. Pen. Code § 261(a)(2)), three counts of sexual penetration by a foreign object (Cal. Pen. Code § 289(a)(1)), and one count of forcible sodomy (Cal. Pen. Code § 286(c)(2)). The California Court of Appeal summarized the facts supporting these charges:

> A. is defendant's stepdaughter. Defendant married A.'s mother in 1996 when A. was five years old, and defendant and A.'s mother lived together thereafter in a house with A. and A.'s older sister. When A. was 12 years old, defendant took her and his son Travis to a racetrack in Sacramento called American for the weekend. They stayed at a hotel. During the drive to the hotel, A. fell asleep in the car. Defendant carried her into the hotel. She woke up as she was being carried into the hotel, but she pretended to be asleep because she was too tired to walk on her own. Defendant put her down on one of the beds in the hotel room. Travis went into the bathroom and took a shower. While Travis was in the shower, defendant removed A.'s pants, shorts, and underwear. A. was scared and remained still. Defendant's hands touched A.'s chest. A. felt

defendant's finger inside of her, but she was unsure if his penis touched her. Although the penetration by defendant's finger hurt, A. remained silent. Defendant removed his finger and pulled A.'s shorts back up. A. could not understand what had happened.

After the incident in Sacramento, defendant began coming into A.'s bedroom at night and putting his finger and his penis in her vagina. This occurred about two or three times a week for more than four years. A. always pretended to be asleep when this occurred. A. could not differentiate between the events because "it happened the same way basically every time." A. recalled one incident that occurred when she was 12 or 13 because defendant had ripped her favorite pair of boxer shorts when he pulled on them while molesting her in her bed. On that occasion, A. remembered that defendant put his penis in her vagina, but she could not remember if he touched her in any other way. However, she did recall that, when she was 13 years old and in eighth grade, defendant more than once put both his penis and his fingers inside her vagina. Defendant's abuse of A. continued when she was 14, 15, and 16 years old. Defendant repeatedly put his fingers and his penis in her vagina.

On an occasion when A. was 16 years old and defendant came into her room at night when she was in bed, A. was on her period and had a tampon in her vagina. Defendant pulled down A.'s pants, turned her over so that she was face down, and put his penis in her "butt." This "really hurt" A., but she bit her tongue and continued to pretend to be asleep. After this event, A. tried to position her body when she went to sleep so that defendant would not be able to flip her over. She was not successful. The anal penetration was repeated "[a]bout five to seven times" while she was 16 years old. On one of those occasions, A. could remember praying "as hard as I could" that it would stop while the event was occurring.

For years, A. was too scared to tell anyone about defendant's abuse of her, and she always pretended to be asleep. She never said anything to defendant about the abuse, and he never said anything to her about it. A. acted like the abuse was not occurring, and she still loved defendant. In December 2006, when A. was 16 years old and in 11th grade, A. told her boyfriend M. about defendant's sexual abuse of her. He was the first person she told about the abuse. She told M. "not to say anything." M. encouraged A. to report the abuse, but A. did not think she would be believed. The abuse continued. In August 2007, A. and M. came up with a plan. They decided that the next time the abuse occurred, they would tell M.'s mother. A. wanted to disclose the abuse because she wanted it to stop.

On August 17 or 18, 2007, A. was assigned to sleep on the downstairs couch in her home because visitors were sleeping in her room. She was lying on the couch pretending to be asleep when defendant removed her blankets, pulled down her pajamas, and put his fingers and then his penis into her vagina. A. tried to call M., but his phone was off. She did not feel that she could report the abuse by herself. On a subsequent occasion in August 2007, defendant abused A. while M. was out of town.

2

A.'s birthday was at the end of August. That night, defendant came into her bedroom and pulled down her pajama bottoms. Then he left the room, and she could hear him going downstairs and then coming back up the stairs. He moved her legs so that they were open, and he then took pictures.

On September 2, 2007, at about 11:00 p.m., A. went to sleep in her bed in her bedroom. She was subsequently awakened by the sound of someone coming up the stairs. Defendant came into her room. A. pretended to be asleep. Defendant climbed up the steps to the top bunk on which she always slept. He pulled the bedding up, put it over A.'s head, removed her pajama bottoms, and pulled up her top. A., who was lying on her back, continued to pretend to be asleep. She was afraid of defendant because he was bigger and stronger than her. Defendant touched A.'s vagina with his fingers and then put his fingers inside her vagina. He removed his fingers and replaced them with his penis. After a while, he removed his penis and left the room. He did not remove the covers from her head or replace her clothing.

A. looked at her cell phone and saw that it was 2:22 a.m. She decided that "[t]his will be the last time," and she sent a text to M. A. then talked to M. on the phone and arranged to meet him and his mother nearby. She dressed, left the house, and met them at the corner. A. asked to be taken to the hospital, and M.'s mother drove them to the hospital. From the hospital, A. went to the police department.

At the police department, A. made a recorded telephone call to defendant. She told defendant that he "hurt me last night" and said "I wanna know that it won't happen again." Defendant responded "It won't happen again, ever." He also said: "I promise. I swear to you. I promise." However, he insisted that it had been a one-time event. Defendant also claimed that he had used only his fingers. Defendant asked A. if she had told her friend. When she said no, he said "Do you know what could happen to me?" He insisted: "I think um, I think it's over. It's done. Forget it." "Do you know you could ruin everything -- my entire life. I've ruined it. I, I ruined it. You can't ruin it, I did. I'm sick [A.]. Alright? I'll stop. I'm sorry." "Okay, if you say anything to anybody, if you say anything to mom, our entire world is gonna fall apart. I'll go to jail." He asserted that the event had occurred because he "had too much to drink" and claimed "I don't really remember." He continued to insist that he had used only his fingers, but then he said "I never did it in you anyways." Defendant eventually conceded that it had not been a one-time event. A. asked him "when was the first time?" and he replied "Maybe American. I don't know. I don't remember." "American" was the race track in Sacramento where defendant and A. had been on the weekend of the first incident of abuse.

After the phone call, the police took A. to another hospital where a sexual assault examination (SART exam) was performed. Linda Richards performed the SART exam. A. told Richards that defendant had assaulted her that morning. A. said that defendant had put both his finger and his penis inside of her. A. stated that defendant had ejaculated in her vagina and that she "felt wetness on

3

the bed." A. denied that there had been any anal penetration.

When Richards asked if A. had engaged in vaginal sex in the last five days, A. said she had had vaginal sex on August 30 and had not had anal sex in the last five days. Richards noted that A. had tenderness upon palpation around the vaginal opening. Richards saw lacerations on the "anal verge which are those little splits that the rectal opening has that expand open when a person makes a bowel movement." Richards described the anal lacerations as "recent" and explained that "they would be somewhere within the 12 hour range." These lacerations were not bleeding, but they had not yet begun to heal. Richards did not find any semen on A.'s body, and no semen was found in A.'s vagina.

Defendant was arrested that afternoon. His penis was swabbed, and the swabs were collected. The penile swabs were found to contain defendant's DNA mixed with A.'s DNA. A.'s DNA was the "major contributor."

Two days after defendant's arrest, he telephoned his home collect from jail. His wife's sister answered the telephone and accepted the call. When defendant came on the line, he said: "'I know, I'm a shit.'" Then he asked "'if she is still talking to me.'" His wife's sister understood him to be referring to his wife, and she responded: "'As far as I know.'" Defendant twice asked her to tell her sister that he had called, and she said yes both times. That was the end of the call.

A. returned to her home after defendant's arrest. A. was "really hurt" that her mother was "mad that he was in jail" more than she was concerned about A. A.'s mother told A. that it was A.'s fault defendant was in jail, and she took away A.'s cell phone and car. A. was very concerned about her mother, who was angry and cried a lot, and A. thought "if I like took back everything that I said, then maybe she would be like okay and happy again." A. mentioned recanting to her mother, and her mother said "'don't say anything to anyone until I get a lawyer.'" A. thought briefly that, if she was going to recant, she might as well get something out of it like a new car. She told her mother that she would recant and that she wanted a Hummer. A. used a friend's computer to pick out the most expensive Hummer available. A.'s mother refused to get her a Hummer. However, A.'s mother "started to be really nice" to A., returned her cell phone, allowed her to use her mother's car, and took A. to see a lawyer about recanting. A. told the lawyer that she would not recant. A. and her mother did not get along after that, and A. stopped living with her mother. Eventually A. went to live with her father.

*People v. Hawley*, No. H034005, 2010 WL 5066085, at *1-*4 (Cal. Ct. App. Dec. 13, 2010) (footnotes omitted).

Hawley went to trial in the Santa Clara County Superior Court. The defense admitted that Hawley had touched A. and masturbated in her presence on September 3, 2007, the night before

his arrest, but argued that this had been a one-time event. Defendant's trial counsel asked the jury to acquit defendant of 11 of the 12 counts.

On December 17, 2008, after three hours of deliberations, the jury found Hawley guilty of all of the charged offenses except for Count 1. Count 1 charged aggravated sexual assault of a child for the Sacramento racetrack incident, and the jury found Hawley guilty of the lesser included offense of simple battery. The court imposed consecutive terms of 15 years to life for each of the four aggravated sexual assault counts and consecutive sentences of six years for six of the other felony counts. For the September 2007 rape count, the Court imposed a concurrent term of six years. In total, petitioner was sentenced to 96 years to life.

On direct appeal of the conviction, petitioner raised several challenges that the California Court of Appeal denied. Respondent's Exhibit F. The California Supreme Court declined his petition for review. Respondent's Exhibit H. Four of the five claims Hawley asserts here were presented to and rejected by the Court of Appeal. Petitioner did not raise the fifth ground for relief here -- an ineffective assistance claim -- on appeal. Rather, he first raised it in a habeas petition to the California Supreme Court. Respondent's Exhibit I.

Hawley filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 in this district. Dkt. No. 1. Judge Phyllis Hamilton stayed the case because Hawley's ineffective assistance claim in the state habeas case was still pending. Dkt. No. 5. After the California Supreme Court denied the petition, Judge Hamilton lifted the stay and renewed an earlier order to show cause why Hawley's petition should not be granted. Dkt. No. 7. Respondent filed a response, and petitioner filed a reply. Dkt. Nos. 10, 19. The parties also filed supplemental briefs about the fifth ground for relief at the request of the Court. Dkt. Nos. 23, 24.

## STANDARD OF REVIEW

The Antiterrorism and Effective Death Penalty Act ("AEDPA") governs federal habeas review and sets a high bar for petitioners to cross. Under the AEDPA, a federal court may not grant a habeas petition for any claim that was adjudicated on the merits in state court unless the state court's adjudication resulted in (1) a decision that was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court

5

of the United States" or (2) a decision that was based on an "unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

Under the "contrary to" clause in Section 2254(d)(1), "a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000). "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id.* at 411; *see also Harrington v. Richter*, 562 U.S. 86, 101 (2011) ("'an *unreasonable* application of federal law is different from an *incorrect* application of federal law.'") (emphasis in original; quoting *Williams*, 529 U.S. at 410). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Id.* (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).

Section 2254(d)(1) restricts the source of clearly established federal law to the Supreme Court's jurisprudence. "[C]learly established Federal law, as determined by the Supreme Court of the United States" refers to "the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision." *Williams*, 529 U.S. at 412 (internal quotation marks omitted). Only Supreme Court holdings that "squarely address[]" the issue presented are clearly established precedent. *See Wright v. Van Patten*, 552 U.S. 120, 125 (2008). "A federal court may not overrule a state court for simply holding a view different from its own, when the precedent from [the Supreme Court] is, at best, ambiguous." *Mitchell v. Esparza*, 540 U.S. 12, 17 (2003). "[C]ircuit precedent does not constitute 'clearly established Federal law, as determined by the Supreme Court,' 28 U.S.C. § 2254(d)(1)" and it "therefore cannot form the basis for habeas relief under AEDPA." *Parker v. Matthews*, 132 S.Ct. 2148, 2155 (2012).

When a higher state court has denied a petitioner's claim without substantive comment, a federal habeas court "'look[s] through'" that denial to the "last reasoned decision" from a lower state court to determine the rationale for the state courts' denials of the claim. *See Cannedy v.*

6

*Adams*, 706 F.3d 1148, 1156 (9th Cir. 2013) (as amended), *cert. denied*, 134 S.Ct. 1001 (2014). Here, the Court of Appeal's decision is the last reasoned decision for the bulk of petitioner's claims.

      The parties agree that grounds one, two, three and four in Hawley's petition were considered on the merits by the Court of Appeal. *See* Dkt. Nos. 10, 19. Consequently, the AEDPA's deferential standard of review in 28 U.S.C. § 2254(d) applies to those claims. *See Cullen v. Pinholster*, 131 S.Ct. 1388, 1402 (2011). Respondent asks that the ineffective assistance claim also be reviewed under the deferential standard, but the record does not support that request. The ineffective assistance claim was presented only to the California Supreme Court, which summarily denied it under *People v. Duvall*, 9 Cal. 4th 464, 474 (1995). *See In re Hawley*, S205758, 2013 Cal. LEXIS 2545, at *1 (Cal. Mar. 27, 2013). *Duvall* explained that a habeas petition must state with particularity the facts warranting habeas relief and include copies of reasonably available documentary evidence. 9 Cal. 4th at 474. By simply citing *Duvall* without providing any further reasoning or substantive discussion, the California Supreme Court telegraphed that the denial was based on a procedural failure. *See Gaston v. Palmer*, 417 F.3d 1030, 1038–39 (9th Cir. 2005) (finding that the California Supreme Court's denial of habeas petition with a citation to *Duvall* and one other case treated the petition as "procedurally deficient" because it was akin to "the grant of a demurrer, i.e., a holding that [petitioner] had not pled facts with sufficient particularity"), *modified on other grounds*, 447 F.3d 1165 (9th Cir. 2006); *see also Hernandez v. Frauenheim*, No. CV 13-01898-GW (VBK), 2015 WL 127851, at *4 (C.D. Cal. Jan. 6, 2015) ("A citation to *Duvall* does not constitute a denial on the merits.") Because the California Supreme Court denied the ineffective assistance claim on procedural grounds and not on the merits, and the issue was not presented to the Court of Appeal, this Court reviews it de novo. *See Stanley v. Cullen*, 633 F.3d 852, 860 (9th Cir. 2011).

## DISCUSSION

      As grounds for federal habeas relief, Hawley claims that: (1) two evidence rulings about the victim's injuries violated due process; (2) his right to confront witnesses was violated; (3) the trial court's imposition of mandatory consecutive sentences violated *Apprendi v. New Jersey*, 530

U.S. 466, 490 (2000); (4) the trial court's application of California Penal Code § 269(c) violated the Ex Post Facto Clause; and (5) he was denied his Sixth Amendment right to effective assistance of counsel.

## I.   EVIDENCE RULINGS

### A.   Background

Hawley's due process claim arises out of two trial court's rulings on evidence about the victim's injuries. On September 3, 2007, nurse Linda Richards performed a sexual assault exam on A. In an evidentiary hearing outside the jury's presence, Richards testified that she found lacerations on A.'s anal verge that were between 12 hours and 5 days old. Although Hawley was not charged with sodomy for the September 3, 2007 incident, or for the 5 days before that incident, and A. testified that she had not had anal sex during the 5 days preceding the exam, the trial court admitted this evidence.

Hawley's attorney argued that he should be allowed to introduce evidence that A.'s sexual contact with her boyfriend outside the five-day time period caused the lacerations, not sexual contact with the defendant.[1] The trial court denied the request on relevance grounds and ruled that because the lacerations were no more than five days old, only sexual conduct within that period would be admitted. The trial court concluded that, in the absence of evidence that the anal lacerations could have been caused by sexual conduct prior to the five-day period, A.'s sexual conduct had no relevance to the source of the anal lacerations. Petitioner mentioned the possibility of calling an expert to testify that the lacerations could have been caused up to a month earlier but did not present a witness on that.

### B.   Discussion

Hawley contends that he was denied a fair trial because of these rulings. A state court's evidentiary ruling may be addressed in a federal habeas action only if it violated constitutional guarantees or the error is of such magnitude that the result is a due process denial of a fair trial.

---

[1] This included evidence suggesting that A. had consensual anal sex with her boyfriend as well as evidence that her boyfriend attempted non-consensual anal sex with A. within a few weeks of the SART exam.

8

*Henry v. Kernan*, 197 F.3d 1021, 1031 (9th Cir. 1999). Failure to comply with such state rules is not a sufficient basis for granting federal habeas relief on due process grounds. *Jammal v. Van de Kamp*, 926 F.2d 918, 919 (9th Cir. 1991).

### 1. Admission of Anal Laceration Evidence

The Court of Appeal agreed with Hawley that the trial court erred in admitting evidence of the anal lacerations:

> [Petitioner] claims that this evidence was irrelevant because A. denied that defendant had any contact with her anus in the five days prior to the SART exam. We agree with defendant that this evidence lacked relevance.

*Hawley*, 2010 WL 5066085, at *10. But the Court of Appeal rejected Hawley's argument that admitting this evidence violated his federal due process rights to a fair trial because he cited no authority for that outcome.

No redressable error lies in that holding. The Supreme Court "has not yet made a clear ruling that admission of irrelevant or overtly prejudicial evidence constitutes a due process violation sufficient to warrant issuance of the writ." *Holley v. Yarborough*, 568 F.3d 1091, 1101 (9th Cir. 2009). That is the end of Hawley's claim because, in the absence of clear Supreme Court authority, this Court cannot find the state court's evidentiary ruling was an unreasonable application of clearly established federal law under 28 U.S.C. § 2254(d)(1). *See Holley*, 568 F.3d at 1101.

The claim also fails because admission of the challenged evidence was almost certainly not prejudicial. As the Court of Appeal found:

> Richards testified at trial unequivocally that the anal lacerations were no more than five days old. A. explicitly denied that defendant had had any contact with her anus in the five days preceding Richards's observation of the anal lacerations. This evidence excluded defendant as the source of the anal lacerations. The prosecutor did not suggest to the jury that the anal lacerations proved that defendant had committed the sodomy count or any other charged offense. Instead, in response to defendant's trial counsel's argument that the anal lacerations were *not relevant* to any of the charged offenses, including the sodomy count, the prosecutor explicitly stated: "Mr. Barton [defendant's trial counsel] is right."

9

1    *Hawley*, 2010 WL 5066085, at *11 (emphasis in original). In light of A.'s testimony, defense

2    counsel's arguments and the prosecutor's response, there is no possibility that the trial court's

3    admission of that evidence caused a substantial and injurious effect on the verdict.

### 2.     Exclusion of Prior Sexual Conduct Evidence

The trial court's exclusion of evidence about A's sexual conduct is equally unavailing for Hawley. The Court of Appeal ruled that the trial court did not abuse its discretion in excluding this evidence:

> The only evidence before the jury was that the anal lacerations were no more than five days old. Thus, A.'s sexual conduct prior to that five-day period could not have resulted in those lacerations. Since this evidence was proffered solely on the issue of the source of the anal lacerations, and it was not relevant to that issue, the trial court did not abuse its discretion in excluding evidence of A.'s prior sexual conduct.

*Id*. at *10.

Petitioner has not shown a reason to grant relief on this issue. The dispositive inquiry is whether the excluded evidence had probative value to the central issue in the case. *See Walters v. McCormick*, 122 F.3d 1172, 1177 (9th Cir. 1997). To answer this question, the court considers five factors: (1) the probative value of the excluded evidence on the central issue; (2) its reliability; (3) whether it was capable of evaluation by the trier of fact; (4) whether it was the sole evidence on the issue or merely cumulative; and (5) whether it constituted a major part of the attempted defense. *Drayden v. White*, 232 F.3d 704, 711 (9th Cir. 2000). Due process rights are not violated by exclusion of evidence when its probative value is substantially outweighed by a risk of prejudice or confusion. *Montana v. Egelhoff*, 518 U.S. 37, 42-43 (1996).

These factors cut definitively against Hawley. Evidence of A.'s prior sexual conduct was proffered to show that Hawley could not be the cause of the anal lacerations, but he was not accused of that -- Hawley was not charged with sodomy for the September 3, 2007 incident or for any incident within five days of the sexual assault exam. Even assuming purely for the sake of argument that the source of the anal lacerations was the central issue in Hawley's case, A.'s sexual conduct before the five-day period would not have had any probative value on it. There was no

1 evidence that the anal lacerations could have been caused by sexual conduct prior to that period. And the trial court did not bar the defense from proffering evidence of A.'s sexual conduct during the five-day period. Excluding the challenged evidence did not violate due process, and the Court of Appeal's denial of this claim was not an unreasonable application of Supreme Court law.

## II. CONFRONTATION CLAUSE

Petitioner argues that his confrontation rights were violated when the trial court refused to allow him to cross-examine A. about "sexual fantasies" in her diary.[2] This challenge is without merit.

The Confrontation Clause guarantees an *opportunity* for effective cross-examination, not cross-examination that is effective in the way the defense might wish. *Delaware v. Fensterer*, 474 U.S. 15, 20 (1985). Trial courts "retain wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on such cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant." *Delaware v. Van Arsdall*, 475 U.S. 673, 679 (1986). As a general rule, a court violates the Confrontation Clause only when it prevents a defendant from examining a particular and relevant topic. *Fenenbock v. Director of Corrections*, 692 F.3d 910, 919 (9th Cir. 2012). A defendant meets his burden of showing a Confrontation Clause violation by showing that "[a] reasonable jury might have received a significantly different impression of [a witness'] credibility had . . . counsel been permitted to pursue his proposed line of cross-examination." *Van Arsdall*, 475 U.S. at 680; *Slovik v. Yates*, 556 F.3d 747, 753 (9th Cir. 2009).

Hawley fails to show a Confrontation Clause defect. Hawley's counsel wanted to introduce evidence that A. made many dairy entries about sexual feelings and experiences but never mentioned Hawley. Dkt. No. 1 at 8. Petitioner claims that A.'s "failure to mention the alleged abuse [in the diary], while discussing other highly personal and extremely sexual details

---

[2] In his petition, Hawley also claims his due process rights were violated by the trial court's ruling, but provides no explanation or discussion of how or why this is the case. And in his reply, he abandons the claim altogether. Consequently, the Court addresses the claim only to the extent it relies on the Confrontation Clause.

11

about herself, strongly suggest[s] that the degree of abuse she accused Hawley of did not actually occur." Dkt. No. 19 at 17. The main problem in Hawley's argument is that the trial court allowed counsel to elicit testimony on this issue. All the court did was direct counsel to use the words "intimate details of your life" rather than "sexual fantasies" when questioning A. about the diary.

That is hardly the grist of a Confrontation Clause error, and the Court of Appeal quickly, and appropriately, dispatched this claim:

> Defendant's trial counsel was not precluded from asking A. whether she had recorded "embarrassing personal things" and "the most intimate details of [her] life" in her diaries. If anything, these descriptions of her diary entries were far more analogous to the sexual abuse than a reference to "sexual fantasies." Sexual *fantasies* are events that have *not* occurred, rather than events that have occurred. Defendant's trial counsel's asserted intent to demonstrate that the sexual abuse was akin to the highly personal events recorded in the diary would not have been furthered by evidence that A. had recorded *imaginary* events in her diary. The probative value of using the words "sexual fantasies" rather than "intimate details of your life" and "embarrassing personal things" was practically nonexistent. Against this lack of probative value, the trial court was entitled to weigh the substantial danger that evidence that A. had written about "sexual fantasies" might be used to improperly suggest that the reported sexual abuse was a mere fantasy, thereby confusing the issues and misleading the jury.

*Hawley*, 2010 WL 5066085, at *13 (emphasis in original).

The trial judge placed a reasonable limit on petitioner's cross-examination and defense counsel did, in fact, elicit evidence from A. about the contents of her diary. On cross-examination, counsel established that the diaries contained "the most intimate details of [A.'s] life" including "boys," "boy problems," and "embarrassing personal things." Counsel also established that A. never mentioned defendant's abuse in her diaries, and he used this evidence in his closing argument. Because a trial judge may impose "reasonable limits on such cross-examination based on concerns about, among other things, harassment, prejudice, confusion of issues, the witness' safety or interrogation that is repetitive or only marginally relevant," which the trial court chose to do in this case, the court's restriction of defense's cross-examination was not a violation of petitioner's rights. *See Van Arsdall*, 475 U.S. at 679. While petitioner seems to assert that it would have benefited his defense to be able to ask about whether her "sexual fantasies" appeared in the diary, Hawley does not explain how this would have led a reasonable jury to a significantly

different impression of A.'s credibility, nor does he have a right to cross-examine in whatever way he thinks proper. *See id*. at 679-80. And in his reply brief, petitioner explicitly concedes that "the state court decision is not unreasonable" on this claim. Dkt. No. 19 at 17. The claim is denied.

### III.  CONSECUTIVE SENTENCES

Petitioner argues that his sentence violates the Sixth Amendment because the trial court imposed consecutive terms based on facts not found by a jury in violation of *Apprendi v. New Jersey*, 530 U.S. 466 (2000), *Blakely v. Washington*, 542 U.S. 296 (2004), and *Cunningham v. California*, 549 U.S. 270 (2007). Dkt. No. 1 at 9-10. In those cases, the Supreme Court held that any fact not admitted by a defendant, other than the fact of a prior conviction, that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury and proved beyond a reasonable doubt. *Apprendi*, 530 U.S. at 490; *Blakely*, 542 U.S. at 301; *Cunningham*, 549 U.S. at 282.

The California Court of Appeal rejected petitioner's argument in a manner consistent with Supreme Court precedent. In *Oregon v. Ice*, 555 U.S. 160 (2009), the Supreme Court upheld the constitutionality of an Oregon statute assigning to judges rather than juries the duty to make findings of fact necessary to impose consecutive sentences for multiple offenses. In *Ice*, the Supreme Court explained that the decision to impose consecutive sentences was not historically a jury function, and the principles set forth in *Apprendi*, *Blakely*, and *Cunningham* do not apply. *Id*. at 168-71. Those cases impose constitutional limits on increasing the statutory maximum sentence of a single conviction, and do not address the imposition of consecutive sentences for convictions on separate charges. *Id.* at 167. A defendant convicted of multiple offenses is not entitled to a jury determination of facts necessary to impose consecutive rather than concurrent sentences. *Id*. at 163-64.

### IV.  EX POST FACTO CLAUSE

The Constitution provides that no State may pass an ex post facto law. U.S. Const. art. I, § 10. A law violates the Ex Post Facto Clause if it: (1) punishes as criminal an act that was not criminal when it was committed; (2) makes a crime's punishment greater than when the crime was committed; or (3) deprives a person of a defense available at the time the crime was committed.

13

*See Collins v. Youngblood*, 497 U.S. 37, 42 (1990).  The Ex Post Facto Clause "is aimed at laws that retroactively alter the definition of crimes or increase the punishment for criminal acts." *Himes v. Thompson*, 336 F.3d 848, 854 (9th Cir. 2003) (quotations and citations omitted).  It is violated when: (1) state regulations have been applied retroactively to a defendant; and (2) the new regulations have created a "sufficient risk" of increasing the punishment attached to the defendant's crimes.  *Id.*

Petitioner has not established an ex post facto claim.  Hawley was convicted of four counts of aggravated sexual assault of a child more than ten years younger than him under Cal. Penal Code § 269.  In 2006, after the charged conduct occurred, the California legislature amended § 269 to add subdivision (c):

> The Court shall impose a consecutive sentence for each offense that results in a conviction under this section if the crimes involve separate victims or involve the same victim on separate occasions as defined in subdivision (d) of section 667.6.

According to Hawley, because "[§] 269 was amended after the alleged offenses in this case, sentencing Petitioner under that amendment violates the Ex Post Facto Clause of the United States Constitution and was not otherwise permitted by the sentencing statutes in effect before the 2006 amendment."  Dkt. No. 1 at 12.[3]  The problem with Hawley's argument is that he was not sentenced under that amendment; he was sentenced under Penal Code § 667.6(d).  Respondent's Exhibit B at 1031, 1033.  The version of § 667.6 operative at the time of the commission of petitioner's offense allowed for a sentence of full, separate, and consecutive terms for each violation of certain sexual offenses, including the ones at issue here, if the crimes involve the same victim on separate occasions.  Cal. Penal Code § 667.6 (2002); *see People v. Jimenez*, 80 Cal. App. 4th 286, 290-92 (2000).  The trial court determined that the crimes involved the same victim on separate occasions and imposed mandatory consecutive sentences under § 667.6(d).  Petitioner has not shown any error in the state courts' application of § 667.6(d) to his sentencing.  Although

---

[3] Petitioner made this claim to the California Court of Appeal.  *See* Respondent's Exhibit C at 47-48.  Although the Court of Appeal's treatment of the ex post facto claim is not crystal clear, it is clear that the court adequately addressed Hawley's underlying arguments on this issue.  *See Hawley*, 2010 WL 5066085, at *16-*17, *16 n.10.

§ 269 has changed since petitioner committed his crimes, petitioner has not shown that this is relevant to the determination of his sentence under § 667.6(d), and is not entitled to habeas relief on this claim.

## V. INEFFECTIVE ASSISTANCE OF COUNSEL

As a last contention, petitioner argues that he had ineffective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668 (1984) is clearly established federal law for analyzing ineffective assistance of counsel claims. *Wilson v. Henry*, 185 F.3d 986, 988 (9th Cir. 1999). *Strickland* sets forth a two-step standard that must be satisfied in order to prove ineffective assistance of counsel. *Strickland*, 466 U.S. at 687-88. As an initial matter, a petitioner must show that counsel's representation fell below an objective standard of reasonableness. *Id*. at 688. The question is not what counsel could have done, but whether the actual choices made by counsel were reasonable. *Babbitt v. Calderon*, 151 F.3d 1170, 1173 (9th Cir. 1998). Judicial scrutiny of counsel's performance is highly deferential, and the Court strongly presumes that counsel's actions fall within the wide range of reasonable assistance. *Strickland*, 466 U.S. at 689-90.

A petitioner must also show that counsel's performance prejudiced him and deprived him of a fair trial with reliable results. *Id*. At 687. A petitioner must prove that, but for counsel's errors, there is a reasonable probability that the result of the proceeding would have been different. *Id*. at 694.

### A. Right to testify

Hawley attacks his trial counsel for failing to advise about his right to testify, which he says he would have chosen to do. Dkt. No. 1 at 12. Hawley brings this claim on the ground that "there was no on-the-record waiver of Petitioner's right to testify at trial." *Id*. But that fact alone fails to carry the day for him.

Waiver of the right to testify may be inferred from the defendant's conduct and is presumed from the defendant's failure to testify or notify the court of his desire to do so. *See United States v. Joelson*, 7 F.3d 174, 177 (9th Cir. 1993) (citation removed). A defendant who wants to reject his attorney's advice and take the stand may do so by insisting on testifying, raising the issue with the court or firing his lawyer. *Id*. "When a defendant remains 'silent in the face of

his attorney's decision not to call him as a witness,' he waives the right to testify." *United States v. Pino-Noriega*, 189 F.3d 1089, 1095 (9th Cir. 1999) (citation omitted); *see also United States v. Nohara*, 3 F.3d 1239, 1244 (9th Cir. 1993). If a defendant waives the right to testify, he also waives his right to claim ineffective assistance of counsel due to his counsel's failure to call him as a witness. *See Nohara*, 3 F.3d at 1243-44 (citing *United States v. Edwards*, 897 F.2d 445, 446-47 (9th Cir. 1990)).

These holdings defeat Hawley's claim. The trial court record is bereft of any evidence even hinting that petitioner tried to fire or change counsel, addressed the court about testifying or manifested any desire at any time to testify at trial. Moreover, petitioner stayed silent in the face of counsel's decision to rest his case in chief without calling him as a witness. He cannot claim ineffective assistance now on this issue. *See Nohara*, 3 F.3d at 1244.

### B.     Forensic Psychologist Testimony

Hawley claims his lawyer was also ineffective for failing to call a forensic psychologist who allegedly concluded that he did not exhibit certain mental health conditions correlated with people who commit sexual crimes. Dkt. No. 1 at 13. The psychologist also allegedly found that Hawley was a low risk for future sexual crimes. *Id.*

To bring an ineffective assistance claim based on the failure to interview or call a particular witness, a petitioner must identify the witness, detail what the witness's testimony would have been, and show how it might have changed the outcome of the proceeding. *See Gustafson v. Long*, No. EDCV 13-1737-JSL DTB, 2014 WL 4187828, at *8 (C.D. Cal. Apr. 16, 2014), *adopted by* 2014 WL 4187838 (C.D. Cal. Aug. 18, 2014). The petitioner must also show that the witness was available at the time of trial and willing to testify. *See United States v. Harden*, 846 F.2d 1229, 1231–32 (9th Cir. 1988); *see also Chafford v. Hedgpeth*, No. 09–cv–01574 PJH, 2013 WL 791320, at *3 (N.D. Cal. Mar. 4, 2013) ("Where there is no evidence that an individual will testify at trial, defense counsel's failure to call the witness does not constitute ineffective assistance of counsel.").

Hawley does not satisfy these requirements. He submitted only his own statements in support of this claim. He did not identify the alleged forensic psychologist by name, show that he

16

or she was available and willing to testify, or submit an affidavit from the psychologist about the substance of the proposed testimony. Accordingly, the Court finds that petitioner is not entitled to habeas relief.

### C. Evidentiary Hearing

Petitioner argues that he is entitled to an evidentiary hearing on the ineffective assistance claim, but an evidentiary hearing is not warranted when, even assuming petitioner's allegations are true, he is not entitled to habeas corpus relief. *See Schriro v. Landrigan*, 550 U.S. 465, 481 (2007). Petitioner has not shown that the facts alleged, if found to be true, would establish a colorable claim under *Strickland*, so there is nothing to be determined in an evidentiary hearing. *See West v. Ryan*, 608 F.3d 477, 485-90 (9th Cir. 2010). The request is denied.

## VI. CUMULATIVE ERROR

Hawley devotes much of his petition to arguing that his first and second claims for relief, when considered cumulatively, warrant habeas relief. He even goes so far as to concede that claim two, standing alone, does not warrant relief, but that when considered in light of claim one, it does.

This argument fails. As an initial matter, it does not appear Hawley raised cumulative error before the Court of Appeal. Under 28 U.S.C. § 2254(b)(2), a federal habeas court may deny an unexhausted claim on its merits when it is clear that the claim does not state a colorable claim for relief. *Cassett v. Stewart*, 406 F.3d 614, 623–24 (9th Cir. 2005). Hawley does not state a colorable claim for relief because the Court has not found any errors in the state appeals court proceedings, let alone cumulative errors. *See United States v. Solorio*, 669 F.3d 943, 956 (9th Cir. 2012) (there can be no cumulative error when there has not been more than one error).

## CONCLUSION

The petition for a writ of habeas corpus is denied. The Court also denies a certificate of appealability pursuant to Rule 11(a) of the Rules Governing Section 2254 Cases. Petitioner has failed to make a "substantial showing of the denial of a constitutional right" on any of his claims. *See* 28 U.S.C. § 2253(c)(2); *see also Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000) (explaining that an applicant satisfies this standard where he or she shows that reasonable jurists could find the

issues debatable or that the issues are "adequate to deserve encouragement to proceed further") (internal quotation omitted).

The Clerk is directed to enter judgment in favor of respondent and against petitioner and close the case.

**IT IS SO ORDERED.**

Dated: September 15, 2015

_____
JAMES DONATO
United States District Judge